IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| PEGGY S. DOMANAGUE | § |
| | |
| VS. | §   CIVIL ACTION NO. 2:06cv108 |
| | |
| COMMISSIONER, | |
| SOCIAL SECURITY ADMINISTRATION | § |

**MEMORANDUM OPINION**

On March 21, 2006, Plaintiff initiated this civil action pursuant to the Social Security Act (The Act), Section 205(g) for judicial review of the Commissioner's denial of Plaintiff's application for Social Security benefits.

**Procedural History**

On September 15, 2003, Plaintiff filed a Title II application and a Title XVI application, each alleging inability to work. Plaintiff alleges inability to work due to Hepatitis C and the following problems resulting from its treatment: heart problems; leg problems; lack of concentration; severe fatigue; dizziness; headaches; hearing problems; and depression. Plaintiff timely filed a request for a hearing before an Administrative Law Judge (ALJ). After a hearing, the ALJ denied benefits.

On January 20, 2006, the Appeals Council denied Plaintiff's request for review. *Tr*. at 6-10. Consequently, the ALJ's decision became the Commissioner's decision. *See Sims v. Apfel*, 530 U.S. 103 (2000); 20 C.F.R. §§ 404.900(a)(4)-(5), 404.955, 404.981, and 422.210(a). Plaintiff sought review by this Court.

**Standards**

In reviewing a denial of Social Security disability benefits, a federal court carefully considers

the following:

1. standards of both judicial review and entitlement to Social Security benefits (*Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000));

2. the transcript and record (*Jimmerson v. Apfel, Comm'r of Soc. Sec.*, 111 F. Supp. 2d 846, 846 and 849 (E.D. Tex. 2000); *cf. Jackson v. Apfel, Comm'r of Soc. Sec.*, 234 F.3d 246 (5th Cir. 2000) (considering the record)); and

3. the parties' briefs (*Jackson*, 234 F.3d 246).

In federal judicial review of the denial of Social Security disability benefits, a strong presumption exists in favor of the defendant. *Jimmerson*, 111 F. Supp. 2d at 849.

A federal court reviews the Commissioner's determination that a claimant was not disabled only to determine whether the Secretary applied the proper legal standard and whether the determination is supported by substantial evidence. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994), *cert. denied*, 514 U.S. 1120 (1995); 42 U.S.C. § 405(g). A federal court must affirm the Commissioner's determination that a claimant was not disabled unless that determination either is not supported by substantial evidence or involved an erroneous application of legal standards in evaluating the evidence. *Carey v. Apfel, Comm'r of Soc. Sec.*, 230 F.3d 131, 135 (5th Cir. 2000); *cf. Masterson*, 309 F.3d at 272).

Substantial evidence is "more than a scintilla but less than a preponderance." *Masterson*, 309 F.3d at 272. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Myers v. Apfel, Comm'r of Soc. Sec.*, 238 F.3d 617 (5th Cir. 2001). In Social Security cases, substantial evidence must do more than create a mere suspicion of the existence of the fact to be established. *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989); *Jimmerson*, 111 F. Supp. 2d at 847.

Medical records play a significant role in reviewing the ALJ's decision. *Greenspan*, 38 F.2d at 238. In determining whether substantial evidence supports the decision, a court considers the following medical evidence:

1. objective medical facts (*Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); Social Security Ruling (SSR) 96-7p; *cf.* 20 C.F.R. § 404.1529(c)(2));

2. medical sources' statements (SSR 96-7p; *cf.* 20 C.F.R. § 404.1529(c)(2)) and reports (*Loza v. Apfel, Comm'r of Soc. Sec.*, 219 F.3d 378, 393 (5th Cir. 2000); SSR 96-7p; *see also Richardson*, 402 U.S. at 402; *cf.* 20 C.F.R. § 404.1529(c)(2)), including clinical findings (*Homan v. Comm'r of Soc. Sec. Admin.*, 84 F. Supp. 2d 814, 818 (E.D. Tex. 2000); *see also Fraga v. Bowen*, 810 F.2d 1296, 1302 n. 4 (5th Cir.1987)) and treating and examining physicians' diagnoses and opinions (*Martinez*, 64 F.3d at 174);

3. the claimant's medical history (*Loza*, 219 F.3d at 393; *see also* 20 C.F.R. § 404.1512(b)(1)-(6));

4. statements and reports from the claimant, treating or examining psychologists, and other persons about the claimant's medical history, treatment, and response (SSR 96-7p; *cf.* 20 C.F.R. § 404.1529(c)(2)); and

5. other information concerning the claimant's symptoms and how they affect the claimant's ability to work (SSR 96-7p; *cf.* 20 C.F.R. § 404.1529(c)(2)).

A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel, Comm'r of Soc. Sec.*, 239 F.3d 698 (5th Cir. 2001). If substantial evidence supports the denial, then a court must accept it. *Brown v. Apfel*, 192 F.3d 492 (5th Cir. 1999); *Jimmerson*, 111 F. Supp. 2d at 848; *see also* 42 U.S.C. § 405(g). A federal court may consult SSA rulings. *Myers*, 238 F.3d 617.

A claimant has an ordinary disability only if the impairment(s) is so severe that it prevents the successful performance of not only past work, but also, considering age, education, and work experience, any other work existing in the national economy. *Loza*, 219 F.3d at 390; *Greenspan*,

38 F.3d at 236; 42 U.S.C. § 423(d)(2)(A); *cf.* 20 C.F.R. § 404.1520(c). The fact finder may follow a sequential process, disposing "of appropriate cases at an early stage." *Loza*, 219 F.3d at 391.

To determine disability, the Commissioner uses a five-step analysis. *Boyd*, 239 F.3d 698; *Greenspan*, 38 F.3d at 236; 20 C.F.R. § 404.1520. At steps one through four, the claimant has the burden of proof. *Masterson*, 309 F.3d at 272; 20 C.F.R.§ 404.1520. If he carries the burden at steps one through three, then he has shown that he is disabled, and the analysis ends. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987); *Boyd*, 239 F.3d 698; 20 C.F.R. § 404.1520(f); Acquiescence Ruling 00-4(2); *see also Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272. If he fails to satisfy step three, but carries the burden at step four, then the burden shifts to the Commissioner at step five. *Bowen*, 482 U.S. at 146 n. 5 (1987); *Boyd*, 239 F.3d 698; 20 C.F.R. § 404.1520(f); Acquiescence Ruling 00-4(2); *see also Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272. A finding that the claimant is or is not disabled at any point in the five-step process is conclusive and terminates the analysis. *Boyd*, 239 F.3d at 705.

At step one, to qualify for Social Security disability benefits the claimant must not be working presently at any substantial gainful activity. *Boyd*, 239 F.3d at 704; *Greenspan*, 38 F.3d at 236; 20 C.F.R. § 404.1520(a)-(b). At step two, to qualify for Social Security disability benefits the claimant must have a severe impairment. *Boyd*, 239 F.3d 698; *Greenspan*, 38 F.3d at 236; 20 C.F.R. § 404.1520(c).

At step three the Commissioner compares the medical evidence of the claimant's impairment(s) to the impairments listed in the regulations appendix. *Shave v. Apfel, Comm'r of Soc. Sec.*, 238 F.3d 592 (5th Cir. 2001); 20 C.F.R. § 404.1520(d); *see also Boyd*, 239 F.3d 698; *Greenspan*, 38 F.3d at 236. The impairment list is in 20 C.F.R. Part 404, Subpart P, Appendix 1.

*Boyd*, 239 F.3d 698; 20 C.F.R. § 404.1520(d). The listed impairments are presumed severe enough to preclude any gainful activity. *Myers*, 238 F.3d 617. If the claimant's impairment meets or equals a listed impairment, then he qualifies for benefits without further inquiry. *Boyd*, 239 F.3d 698; *Greenspan*, 38 F.3d at 236; *see also* 20 C.F.R. § 404.1520(b)-(e). If the claimant's impairment does not match or equal a listed impairment, then the evaluation proceeds to step four. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *Greenspan*, 38 F.3d at 236; 20 C.F.R. § 404.1520(e).

At steps four and five, the Commissioner determines whether, considering the claimant's age, education, and work experience, he can do his own past work or any other work existing in the national economy; if not, then he qualifies for benefits. *Myers*, 238 F.3d 617; *Greenspan*, 38 F.3d at 236; 20 C.F.R. § 404.1520(b)-(f). The issue at step four is whether the claimant's impairment prevents him from performing his past relevant work. *Greenspan*, 38 F.3d at 236; 20 C.F.R. § 404.1520(e). The residual functional capacity assessment is used "to determine whether an individual is able to do past relevant work." SSR 96-8p at 2.

Residual functional capacity is a medical assessment of what a claimant can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his medically determinable impairments. SSR 83-10 at 7. The residual functional capacity assessment assesses the claimant's work-related abilities on a function-by-function basis, including the functions in 20 C.F.R. § 404.1545(b). SSR 96-8p at 1. Title 20 C.F.R. § 404.1545(b) includes the functions of walking, standing, sitting, lifting, carrying, and other physical functions.

A claimant's residual functional capacity is determined by combining a medical assessment of the claimant's impairments with descriptions by physicians, the applicant, or others of any limitations on the claimant's ability to work. *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir.

1988).  SSA assesses residual functional capacity based on all relevant record evidence of a claimant's ability to do work-related activities; relevant record evidence of a claimant's ability to do work-related activities includes acceptable medical sources and information about the claimant's symptoms.  SSR 96-8p.  Acceptable medical sources for determining residual functional capacity include medical source statements.  *Id*.  At step four, if the claimant is capable of performing his past relevant work, then he is not disabled.  *Boyd*, 239 F.3d 698; *Greenspan*, 38 F.3d at 236; 20 C.F.R. § 404.1520(e).

The ALJ is the fact finder.  *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991).  The ALJ has sole responsibility for determining a claimant's disability status.  *Newton*, 209 F.3d at 455.  The authority to determine credibility belongs to the ALJ, who weighs the credibility in making fact findings.  *Greenspan*, 38 F.3d at 237.

## Facts

### *Background – Age and Education*

At the time of the ALJ's decision, March 16, 2005, Plaintiff was a fifty-two-year-old with thirteen years of formal education.  *Tr*. at 19.  Plaintiff alleges a disability onset date of February 28, 2003.

### *Medical Facts and Opinions*

Medical evidence includes the following medical records:

### *Longview Gastroenterology Clinic*

On September 20, 2001 (*Tr*. at 163), and October 16, 2003 (*Tr*. at 162), she saw Randy L. Morton, M.D. due to right leg pain because of varicose veins.  On February 13, 2004, Plaintiff had joint pain.  *Tr*. at 198. Dr. Morton performed a right venous closure procedure on July 6, 2004 (*Tr*.

at 267-69), which failed (*Tr.* at 310). After her hearing before the ALJ, Plaintiff had another surgery on her right leg. *Tr.* at 310.

*Psychologist Alison Glezen, Ph.D.*

On October 4, 2003, Dr. Glezen assessed Plaintiff's global assessment of functioning score as 45 currently but 70 in the past year. *Tr.* at 192. Dr. Glezen noted, regarding Plaintiff's memory, attention, and concentration:

> She recalled two of three items after five minutes and counted back from twenty. She was unable to do serial seven subtractions. She named the current and previous Presidents, but could not recall the one before Clinton. She had normal immediate auditory memory; she repeated seven digits forward on one of two attempts, and five, backward.

*Tr.* at 190. Dr. Glezen opined that Plaintiff was "functioning with the average range of intelligence in spite of being ill [and that] it is felt this may be lower than her actual IQ because of difficulty concentrating at present." *Tr.* at 192. Dr. Glezen noted that Plaintiff had been depressed and anxious as a result of being sick; Dr. Glezen opined that Plaintiff had a single, moderate episode of major depressive disorder. *Tr.* at 192.

*Disability Determination Services*

On December 5, 2003, a Disability Determination Services physician assessed Plaintiff's mental residual functional capacity and determined that she has only mild difficulties in maintaining concentration, persistence, or pace. *Tr.* at 241.

**The Hearing**

At the hearing, only Plaintiff testified. *Tr.* at 316. Plaintiff testified that she became unable to work when she learned that she had hepatitis C. *Tr.* at 319. That is when she applied for disability benefits. *Tr.* at 329. She tried to work after she was diagnosed. *Tr.* at 327. Her response

to treatment was grotesque, and once she threw up afterward for eighteen hours. *Tr*. at 329-30. Her condition has worsened gradually since that time. *Tr*. at 319.

She is anemic (*Tr*. at 340), has fatigue, is sick, cannot concentrate, becomes confused, and "can't get up" or go fast, and her joints ache all over (*Tr*. at 320). She cannot function if she gets "into a menageric-like" situation. *Tr*. at 335. She cannot communicate with people. *Tr*. at 321.

If she sits still long, she becomes rigid and cannot stand. *Tr*. at 320. If she stands long, she hurts. *Tr*. at 320. Her most comfortable position is sleeping. *Tr*. at 323.

She cannot sweep, mop, or do laundry because bending over affects her. *Tr*. at 322-23. Housework that used to take her five minutes now takes her an hour. *Tr*. at 323. Putting on make-up used to take ten minutes, but now takes one hour. *Tr*. at 325.

She had two surgeries on the veins in her leg. *Tr*. at 331 and 333. Her problems with that leg still cause much pain when she stands or walks. *Tr*. at 332. She has pain daily in that leg but takes no medication for the leg. *Tr*. at 333.

She went to Texas Rehabilitation to be trained for work other than as a barber. *Tr*. at 327. Texas Rehabilitation is sending her to school to train. *Tr*. at 334. She now goes to college and is taking twelve hours of classes now. *Tr*. at 323. She has difficulty learning. *Tr*. at 334. She has to try hard to concentrate and has difficulty remembering things. *Tr*. at 336. She has a computer, which she is learning to use. *Tr*. at 324.

## *ALJ's Decision*

On March 16, 2005, the ALJ issued an opinion denying benefits to Plaintiff. *Tr*. at 25. Following the five-step evaluation process, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. *Tr*. at 24.

At step two the ALJ determined that Plaintiff has Hepatitis C, a severe impairment. *Tr.* at 24. The ALJ explicitly stated the *Stone* standard: "an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on an individual that it would not be expected to interfere with the individual's ability to work." *Tr.* at 22. The ALJ noted that the medical record shows an episode of major depressive disorder (*Tr.* at 20-21) with anxiety (*Tr.* at 20). The ALJ said that Plaintiff was under great situational stress, requiring medication, and had an episode of major depression, but that these did not interfere with academic training and that Plaintiff had no long-standing problems with mood. *Tr.* at 21. The ALJ went on to apply the standard: "The claimant's mental impairment, as revealed by the entire record in this case, and by observations during the hearing is such a slight abnormality that it would have only a minimal effect on the ability of the claimant to engage in work activity." *Tr.* at 22. At step three the ALJ found that the medical findings associated with Plaintiff's impairment did not establish a listed impairment. *Tr.* at 16.

At step four the ALJ found that Plaintiff can lift/carry twenty pounds occasionally and ten frequently, stand/walk six hours a day, and occasionally climb, balance, stoop, kneel, and crouch. *Tr.* at 23. He found no additional limitations on her residual functional capacity.

After evaluating each of Plaintiff's claims of impairment, the ALJ considered Plaintiff's complaints of pain to determine whether they would further limit her residual functional capacity. *Tr.* at 12. After considering the medical evidence, Plaintiff's assertions, and the medication taken by Plaintiff, the ALJ determined that Plaintiff's subjective complaints were not supported by the medical evidence and not entirely credible. The ALJ considered and evaluated the intensity, persistence, and limiting effects of Plaintiff's alleged pain and how it might limit the full range of work activity. The ALJ noted that Plaintiff may experience some degree of discomfort periodically,

but that this is not inconsistent with the performance of light work. *Tr*. at 23. He noted that neither the objective medical evidence nor Plaintiff's testimony establishes that the ability to function has been so severely impaired as to preclude all types of work activity for a continuous 12-month period. *Tr*. at 23.

The ALJ found that Plaintiff retains the residual functional capacity to perform her past relevant work as a barber. *Tr*. at 24-25. Therefore, the ALJ concluded that Plaintiff is not entitled to a period of disability or disability insurance benefits under the Act. *Tr*. at 24-25.

## Discussion

Plaintiff contends that (1) the ALJ's step two finding that Plaintiff does not have a severe mental impairment is erroneous because although he said that he applied the *Stone* standard, he did not, and the medical record and Plaintiff's testimony show that her mental impairment has more than a minimal effect on her ability to function because she has problems with concentration and (2) the ALJ failed to appropriately evaluate Plaintiff's complaints of pain.

1.  ***Whether the ALJ's step two finding that Plaintiff does not have a severe mental impairment is erroneous because although he said that he applied the Stone standard, he did not, and the medical record and Plaintiff's testimony show that her mental impairment has more than a minimal effect on her ability to function because she has problems with concentration***

The ALJ explicitly stated the *Stone* standard: "an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on an individual that it would not be expected to interfere with the individual's ability to work." *Tr*. at 22. The ALJ went on to apply the standard: "The claimant's mental impairment, as revealed by the entire record in this case, and by observations during the hearing is such a slight abnormality that it would have only a minimal effect on the ability of the claimant to engage in work activity." *Tr*. at 22. Although Plaintiff

10

disagrees with the ALJ's conclusion, she has not shown that he failed to apply the standard and she has not pointed out record evidence showing that the ALJ applied the standard incorrectly. This Court's Order Directing Filing of Briefs orders that each contention must be supported by specific reference to the portion of the record on which the party relies.

The ALJ said that Plaintiff was under great situational stress, requiring medication, and had an episode of major depression, but that these did not interfere with academic training and that Plaintiff had no long-standing problems with mood. Plaintiff contends that the medical records' numerous references to Plaintiff's depression and anxiety, psychological testing results, and the unchallenged global assessment of functioning score assessed by Dr. Glezen (*Tr*. at 188-93), show that Plaintiff had grounds for asserting depression and anxiety.

Plaintiff contends that the indication in Dr. Glezen's report that Plaintiff experienced problems with concentrating shows that her mental impairment has more than a minimal effect on her ability to function. Dr. Glezen noted, regarding Plaintiff's memory, attention, and concentration:

> She recalled two of three items after five minutes and counted back from twenty. She was unable to do serial seven subtractions. She named the current and previous Presidents, but could not recall the one before Clinton. She had normal immediate auditory memory; she repeated seven digits forward on one of two attempts, and five, backward.

*Tr*. at 190. These statements do not show a concentration deficit expected to interfere with her ability to work.

Dr. Glezen opined that Plaintiff was "functioning with the average range of intelligence in spite of being ill [and that] it is felt this may be lower than her actual IQ because of difficulty concentrating at present." *Tr*. at 192. Dr. Glezen noted that Plaintiff had been depressed and

anxious as a result of being sick; Dr. Glezen opined that Plaintiff had a single, moderate episode of major depressive disorder. *Tr*. at 192.

Assuming *arguendo*, as Plaintiff contends, that the medical record and Plaintiff's testimony show that she had grounds for asserting depression and anxiety, that fact would be insufficient to show that the ALJ erred at step two. The ALJ noted that the medical record shows an episode of major depressive disorder (*Tr*. at 20-21) with anxiety (*Tr*. at 20). Diagnoses of an episode of major depressive disorder and anxiety, however, do not constitute a showing of a mental impairment expected to interfere with the individual's ability to work.

The ALJ found that Plaintiff retains the residual functional capacity to perform her past relevant work as a barber. *Tr*. at 24-25. Plaintiff does not contend that her alleged problems with concentrating preclude her ability to perform her past work as a barber. *Tr*. at 24. Plaintiff's contentions lack merit.

## 2.     *Whether the ALJ failed to appropriately evaluate Plaintiff's complaints of pain*

Plaintiff contends that the objective medical evidence underlying her impairments could cause the pain she alleged. Plaintiff says that the extensive medical record demonstrates medical problems which reasonably could be anticipated to cause severe pain. Plaintiff contends that the ALJ did not address pain in his decision and did not consider and evaluate the intensity, persistence, or limiting effects of Plaintiff's pain or how it might limit the full range of work activity.

On February 13, 2004, Plaintiff had diarrhea with cramps and joint pain. *Tr*. at 198. On September 20, 2001, and October 16, 2003, she saw Dr. Morton due to right leg pain because of varicose veins. Dr. Morton performed a right venous closure procedure on July 6, 2004 (*Tr*. at 267-69), which failed (*Tr*. at 310). Plaintiff says that she complained of much pain in her leg and still

had pain after her hearing before the ALJ; however, Plaintiff points out no record evidence of either of these assertions of pain. *Tr.* at 310. Plaintiff cites no additional record evidence of pain.

The ALJ noted that Plaintiff may experience some degree of discomfort periodically, but that this is not inconsistent with the performance of light work. *Tr.* at 23. He noted that neither the objective medical evidence nor Plaintiff's testimony establishes that the ability to function has been so severely impaired as to preclude all types of work activity for a continuous 12-month period. *Tr.* at 23.

The ALJ's decision shows that he considered and evaluated the intensity, persistence, and limiting effects of Plaintiff's alleged pain and how it might limit the full range of work activity. Plaintiff has not pointed out any additional evidence that he should have included in this analysis.

The ALJ found that Plaintiff can lift/carry twenty pounds occasionally and ten frequently, stand/walk six hours a day, and occasionally climb, balance, stoop, kneel, and crouch. *Tr.* at 23. He found no additional limitations on her residual functional capacity.

Plaintiff does not contend that her alleged pain precludes her performing her past work as a barber. Plaintiff has not shown that the ALJ erred in his evaluation of Plaintiff's alleged pain, and she has not shown that her alleged pain precludes her ability to perform her past relevant work as a barber. She has pointed out no record evidence showing that her alleged pain further limited her residual functional capacity. Plaintiff's contentions lack merit.

## Conclusion

Having reviewed the record, this Court determines that the record shows that the Administration correctly applied the applicable legal standards and that substantial evidence

supports the Administration's determination that Plaintiff is not disabled.

The Court therefore

**ORDERS**, **ADJUDGES,** and **DECREES** that this action is **DISMISSED**.

SIGNED this 16th day of January, 2008.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE